## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| FRANZ RIEGERT and | ) | Case No.  04-04191-TLM |
| FAE RIEGERT, | ) | |
| | ) | |
| Debtors. | ) | MEMORANDUM OF DECISION |
| | ) | |
| _____ | ) | |
| | ) | |
| FARMERS & MERCHANTS BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | Adversary No. 04-6299-TLM |
| | ) | |
| FRANZ RIEGERT and | ) | |
| FAE RIEGERT, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## INTRODUCTION

Farmers & Merchants Bank ("Plaintiff") brought this adversary proceeding
objecting to the discharge of a portion of an indebtedness owed by chapter 7
debtors, Franz and Fae Riegert ("Defendants").  Plaintiff contends that this
obligation should be excepted from discharge under § 523(a)(2)(A) and/or

MEMORANDUM OF DECISION - 1

§ 523(a)(4).

Trial in the matter commenced on August 11, 2005.  At the close of
Plaintiff's case in chief, Defendants moved the Court for a judgment in their favor
and dismissal of the action.  The Court took that matter under advisement and
adjourned the trial until it could be resolved.  The Decision today addresses
Defendants' motion.  The Court concludes it will be granted.

**FACTS**

Given the nature of the motion and the Court's decision on it, the evidence
presented by Plaintiff in its case in chief will be evaluated in some detail.

### A.    Factoring agreement

In September, 2003 Plaintiff entered into a factoring and security
agreement with RPM Machine, Inc. ("RPM").  *See* Ex. 4.  This agreement
continued a prior factoring relationship between RPM and Plaintiff.

Under the 2003 agreement, Plaintiff would purchase RPM's accounts.  It
would advance an amount equal to the face amount of the RPM invoices
submitted for purchase under the agreement, less certain fees and reserves.  RPM
was apparently not required to submit all its invoices to Plaintiff, and Plaintiff had
the ability to determine if an invoice was "eligible" or acceptable for purchase.
There was a maximum amount that could be advanced at any one time under the
factoring agreement.  Upon purchase, Plaintiff could collect directly from RPM's

MEMORANDUM OF DECISION - 2

account debtors.  If RPM received the payment from a customer on an invoice purchased by Plaintiff, it was to forward it or make an equivalent payment to Plaintiff.  The agreement further provided that Plaintiff could require RPM to repurchase accounts if liability or payment was disputed by the account debtor or if there was an occurrence of default under the factoring agreement.

The factoring agreement was signed by Franz Riegert as RPM's president and by Glen Henderson as its vice president.  Mr. Riegert testified that he is an owner of RPM and that, after his "partner" (apparently Mr. Henderson) left the business, he owned a "controlling interest" in RPM.  The extent of this interest, or of Mrs. Riegert's ownership in RPM, was not established.[1]

Prior to this agreement, both Defendants executed March, 1997 guarantees of RPM's obligations to Plaintiff.  *See* Ex. 5, Ex. 6.  They guaranteed all RPM's "indebtedness" to Plaintiff, a term expansively defined in the guarantees. Defendants do not dispute that the guarantees are effective in regard to any unpaid RPM obligations under the 2003 factoring agreement.

### B.    Invoices

The exhibits, and the testimony of Joyce Goodman, a vice president and special credits officer of Plaintiff, establish that Plaintiff purchased several

---

[1]  According to Defendants, Ms. Riegert was neither a director nor an officer of RPM, and they expressly deny Ms. Riegert had, absent her community property interests, any ownership interest in RPM.  *See* Doc. No. 3 at 2.

MEMORANDUM OF DECISION - 3

invoices from RPM that were, for one reason or another, problematic and for

which Plaintiff was not repaid.  These apparently form a subset of a larger group

of invoices that were purchased by Plaintiff under the agreement, or its

predecessor agreements[2], over an extended period.

      These subject invoices are summarized below, and are grouped by the

Court according to apparent similarity of facts or issues presented.

1.      Invoice 20427 (6/12/03).
        Face amount $1,943.00.
        Amount advanced $1,651.55, less initial fee.[3]

---

[2]  Some of the invoices in question and discussed below predate the September, 2003 agreement, Ex. 4.

[3]  To simplify the voluminous and complicated documents, Plaintiff made a "package" of exhibits for each of the invoices at issue in the litigation.

The first exhibit in each package was a copy of RPM's invoice to its customer.  *See*, *e.g.*, Ex. 7 (Invoice 20427).  The second was a copy of the fax transmittal cover sheet from RPM to Plaintiff, tendering the invoice for purchase under the agreement.  *See*, *e.g.*, Ex. 8.  Most of the time, this cover sheet would concern multiple invoices, one of which was the subject of the dispute.  *Id.* (showing disputed Invoice 20427, and one other, Invoice 20428).  The cover sheet would total all the attached invoices, estimate bank fees and reserves, and indicate a net amount RPM believed should be advanced.  *Id.*

The third exhibit in each package was a copy of Plaintiff's internal "purchases & advances report" concerning the subject invoice, and any others shown on the transmittal, itemizing the funds to be disbursed to RPM.  *See*, *e.g.*, Ex. 9.  Since not all the invoices on a transmittal were contested by Plaintiff (*i.e.*, some were properly paid and are not at issue in this suit), this Decision's text sets forth the "face amount" of the disputed invoices only.

The "amount advanced" on the invoice, as shown in the Decision text, takes the face amount and subtracts the "reserve" shown on the purchases & advances report.  However, an "initial fee" was also charged and withheld before Plaintiff determined the actual net amount it provided RPM under the agreement.  Since this initial fee was calculated against the entire group of invoices shown on both the cover sheet and the purchases & advances report, the portion of the initial fee related to any one disputed invoice cannot be readily determined.  *See*, *e.g.*, Ex. 9.  Where this situation exists, the Court notes "less initial fee" to indicate the amount advanced

                                                 (continued...)

MEMORANDUM OF DECISION - 4

Invoice 20376 (5/12/03).
Face amount $1,571.20.
Amount advanced $1,414.08, less initial fee.

Invoice 20430 (6/13/03).
Face amount $589.00.
Amount advanced $500.65, less initial fee.

Invoice 20457 (6/26/03).
Face amount $418.90.
Amount advanced $356.07, less initial fee.

Invoice 20626 (9/24/03).
Face amount $4,732.00.
Amount advanced $4,022.20, less initial fee.

Invoice 20732 (11/18/03).
Face amount $3,147.00.
Amount advanced $2,674.95, less initial fee.

The total advanced to Plaintiff is $10,619.50 less the portion of the initial

fees shown on the purchases & advances reports attributable to the six invoices.

Defendants admit that each of the invoices in this group is found in RPM's

records; that such records show RPM was paid by its customers; and that RPM's

---

[3](...continued)
appears to need further adjustment to accurately reflect what RPM received. An exception exists
where the cover sheet and the purchases & advances report concern only a single invoice; in such
a case, the Court can determine the actual amount advanced, net of both reserve and initial fee.
Those situations are noted in the Decision text by the omission of the phrase "less initial fee."

The last document following the purchases & advances report, was a copy of selected
requests for admission and Defendants' responses. The responses addressed what RPM's records
showed in connection with the subject invoice, such as RPM's receipt of payment, RPM's
payment to Plaintiff, or whether RPM's computerized or paper records reflected the subject
invoice at all. These are discussed in the text.

MEMORANDUM OF DECISION - 5

records do not show that Plaintiff was paid.[4]

2.        Invoice 20371 (5/8/03).
         Face amount $12,795.00.
         Amount advanced $11,515.50, less initial fee.

         Invoice 20377 (5/14/03).
         Face amount $12,795.00.[5]
         Amount advanced $11,131.65.

         Invoice 20385 (5/19/03).
         Face amount $2,962.50.
         Amount advanced $2,666.25, less initial fee.

         Invoice 20425 (6/11/03).
         Face amount $4,850.00.
         Amount advanced $3,977.00

         Invoice 20444 (6/19/03).
         Face amount $4,850.00.[6]
         Amount advanced not shown; presumably $3,977.00.[7]

         Invoice 20467 (6/30/03).
         Face amount $13,568.00.
         Amount advanced $11,532.80, less initial fee.

---

[4] The responses to Plaintiff's requests for admissions are qualified and limited. They make clear that Defendants "deny [the] allegations, since [they] concern RPM and [Defendants did] not individually maintain RPM records." (And Plaintiff never proved that they did.) The responses continue: "Franz Riegert, as President of RPM, on behalf of RPM, admits that RPM's records" either failed to show a payment to Plaintiff, or showed a payment to RPM and a lack of payment to Plaintiff, or the like. *See, e.g.*, Ex. 9.

[5] Invoice 20377 refers to the same customer purchase order (#11146) and the same sales order (#6781) as does Invoice 20371, but shows a different shipping and due date. *See* Exs. 26, 29.

[6] Though Invoice 20444 concerned the same customer and same item description as Invoice 20425, the customer purchase order numbers are different. *See* Exs. 35, 38.

[7] There is no copy of Plaintiff's purchases & advances report for this invoice, but a figure can be ascribed because the face amount of the invoice is the same as Invoice 20425.

MEMORANDUM OF DECISION - 6

Invoice 20499 (7/17/03).
Face amount $12,795.00.
Amount advanced $10,491.90.

Invoice 20691 (10/29/03).
Face amount $16,197.00.
Amount advanced $13,281.54.

Invoice 20737 (11/20/03).
Face amount $4,995.00.
Amount advanced $4,095.90.

Invoice 20413 (6/4/03).
Face amount $3,960.00.
Amount advanced $3,366.00, less initial fee.

Invoice 20589 (9/5/03).
Face amount $5,060.00.
Amount advanced $4,149.20.

Invoice 20611 (9/16/03).
Face amount $4,400.00.
Amount advanced $3,608.00.

The responses to the requests for admissions for this group (where Plaintiff

provided such responses in its exhibits) indicate that RPM had no record of the

invoice in its computer and no hard copy.[8]

Plaintiff, for those invoices in this group where it did not provide a

response to a request for admission, contended that Fed Ex and UPS shipping

records (Exs. 2, 3) failed to show any RPM delivery to customers of the items

---

[8] This statement is accurate with one exception.  Defendants' answer to the request for admissions regarding invoice 20691 states the invoice is found in the computer records though no hard copy was found in RPM's files.

MEMORANDUM OF DECISION - 7

referenced in the challenged invoices.[9]

This group of challenged invoices totals $83,792.74 before deducting the

initial fee for four of the twelve invoices as indicated.

3.      Invoice 20707 (11/7/03).
        Face amount $3,080.00.
        Amount advanced $2,525.60.

        Invoice 20735 (11/19/03).
        Face amount $3,080.00.[10]
        Amount advanced $2,618.00, less initial fee.

Defendant's responses to the requests for admissions indicate that RPM

found these invoices in its computer records, though not in RPM's hard copies,

and that RPM has no record showing payment on either invoice. The total

advanced is $5,143.60, before subtracting the one initial fee.

4.      Invoice 20704 (11/6/03).
        Face amount $1,423.50.[11]
        Amount advanced $1,148.10, less initial fees.[12]

_____

        [9] Exhibits 2 and 3 were admitted without objection by Defendants. Plaintiff's counsel
represented to the Court that the goods referenced in the disputed invoices are not shown in such
Fed Ex or UPS records as shipped. No witness testified regarding these exhibits. While
Plaintiff's counsel's representation was not challenged, neither was the accuracy or the
completeness of these shipping records stipulated or acknowledged by Defendants.

        [10] The customer identification and purchase order numbers are the same as Invoice
20707, though the dates on the invoices are different. *See* Exs. 59, 62.

        [11] The face amount of the total subject invoice is $1,836.00. *See* Ex. 65. However,
Plaintiff admits that $412.50 of this amount was actually paid, leaving the "face amount" at issue,
as per note 3 *supra*, at $1,423.50.

        [12] The purchases & advances report shows $1,560.60 advanced from which $412.50
must be deducted (leaving $1,148.10), and from which the initial fees related to both the $412.50

                                                        (continued...)

MEMORANDUM OF DECISION - 8

Defendants' responses to the requests for admissions agree that RPM's records show this invoice was issued originally at $1,836.00.   They contend, however, that RPM's records show a later, revised invoice for $412.50 of that amount, and that a note in the records indicates the customer rejected certain parts, and that the rejected parts were re-invoiced on Invoice 20746, which is not one of the challenged invoices in this litigation.  Plaintiff admitted it was paid for the $412.50 portion of Invoice 20704.

5.      Invoice 20616 (9/19/03).
        Face amount $2,970.00.
        Amount advanced $2,524.50, less initial fee.

According to Defendants, RPM's records show two separate invoices in differing amounts but with the same invoice number.  RPM's records indicate that one of these invoices was not paid by the customer, and that Plaintiff was not paid.  There is apparently no dispute as to the other invoice.

6.      Invoice 20345 (5/1/03).
        Face amount $13,568.00.
        Actual amount advanced $11,804.16.

Defendants' response to the request for admissions indicates that RPM's computer records show this invoice as being in a different amount.  No admission is made as to payment, though Plaintiff's witness testified, as she did to each of

---

[12](...continued)
and the $1,560.60 must be deducted.  *See* Ex. 67.

MEMORANDUM OF DECISION - 9

the invoices, that Plaintiff was not paid.

### C.    RPM's chapter 11

RPM filed a voluntary petition for chapter 11 relief.  Plaintiff was a creditor in that reorganization and filed a proof of claim.  It appears that Plaintiff, for some reason, failed to timely file a continuation financing statement and, thus, it found its secured position rendered inferior to that of other secured creditors in RPM's case.  After limited distributions to Plaintiff through RPM's bankruptcy, and from a Small Business Administration guarantee, Plaintiff still had an outstanding unpaid obligation.

Plaintiff sought to recover on Defendants' guarantees.  Defendants filed a joint petition for chapter 7 bankruptcy relief.  This litigation ensued.  Additional facts will be discussed below in the disposition of the contentions of the parties.

## DISCUSSION AND DISPOSITION

### A.    Standards under § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge any debt obtained through "false pretenses, a false representation, or actual fraud."  Section 523(a)(2)(A).
This Court has held:

> To invoke the protections of this provision, a creditor must prove by a preponderance of the evidence, *see Grogan v. Garner*, 498 U.S. 279, 291 (1991), that: (1) Defendant made representations; (2) which at the time Defendant knew were false; (3) Defendant made the representation with the intention of deceiving Plaintiff;

MEMORANDUM OF DECISION - 10

(4) Plaintiff relied on such representations; and (5) Plaintiff sustained the alleged loss as the proximate result of the representation.

*Bell v. Smith (In re Smith)*, 232 B.R. 461, 465, 98.4 I.B.C.R. 119, 120 (Bankr. D. Idaho 1998) (citing *Am. Express v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1125 (9th Cir. 1996)); *see also Diamond v. Kolcum (In re Diamond)*, 285 F.3d 822, 827 (9th Cir. 2002); *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000); *Tsurukawa v. Nikon Precision, Inc., (In re Tsurukawa)*, 287 B.R. 515, 520 (9th Cir. BAP 2002); *Tobin v. Sans Souci Ltd. P'ship (In re Tobin)*, 258 B.R. 199, 203 (9th Cir. BAP 2001). The reliance must be "justifiable" which connotes a less demanding standard than reasonable reliance. *Sea Win, Inc. v. Tran (In re Tran)*, 301 B.R. 576, 583 (Bankr. S.D. Cal. 2003) (citing *Field v. Mans*, 516 U.S. 59, 61 (1995)); *Tallant v. Kaufman (In re Tallant)*, 218 B.R. 58, 67 (9th Cir. BAP 1998).

*Wells Fargo Bank Nw., N.A. v. Covino (In re Covino)*, 04.3 I.B.C.R. 98, 103-04 (Bankr. D. Idaho 2004).

The preponderance of the evidence standard mandated under *Grogan v. Garner* applies to both this cause of action under § 523(a)(2)(A) and the cause under § 523(a)(4) addressed below. This standard requires affirmative proof "sufficient to persuade the finder of fact that the proposition is more likely true than not." *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 784 n. 10 (9th Cir. BAP 2000).

**B.      Standards under § 523(a)(4).**

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" Plaintiff does

MEMORANDUM OF DECISION - 11

not contend, and the evidence would not support, that a cause of action exists

under the fiduciary fraud/defalcation or embezzlement provisions of this section.

Plaintiff does contend, however, that an indebtedness is owed by Defendants[13]

which should be accepted from discharge on the basis of larceny.

To prevail on this cause, Plaintiff must prove "the fraudulent and wrongful

taking and carrying away of the property of another with intent to convert the

property to the [debtor's] use without the consent of the owner.  As distinguished

from embezzlement, the original taking of the property must be unlawful."  4

Collier on Bankruptcy ¶ 523.10[2] (Alan N. Resnick & Henry J. Sommer eds.,

rev. 15th ed. 1998).  *See also, U-Save Auto Rental of Am. v. Mickens (In re*

*Mickens)*, 312 B.R. 666, 680 (Bankr. N.D. Cal. 2004); *Wussler v. Silva (In re*

*Silva)*, 99.2 I.B.C.R. 77, 80 (Bankr. D. Idaho 1999).

## C.    Defendants' motion

At the close of Plaintiff's case in chief, Defendants moved the Court to

dismiss the complaint and enter judgment.  Defendants contend Plaintiff presented

inadequate proof of its contentions under either § 523(a)(2)(A) or § 523(a)(4).

Defendants did not specifically advise the Court of the authority under

---

[13]  Plaintiff did not make clear precisely what the amount of indebtedness was that it contended fit under either § 523(a)(2)(A) or § 523(a)(4).  The Court's discussion of the invoices, *supra*, leads it to conclude that the maximum amount could not be more than $115,032.60, less initial fees in an amount not capable of determination from the evidence.  Though Ms. Goodwin testified that Plaintiff was owed significantly larger amounts by RPM, and thus by Defendants under the guarantees, only potentially nondischargeable debt is at issue in this litigation.

MEMORANDUM OF DECISION - 12

which the motion was brought.  The Court concludes, however, that the request

was made under the provisions of Fed. R. Civ. P. 52(c), made applicable in this

adversary proceeding by Fed. R. Bankr. P. 7052.  This Court has previously

stated:

> Rule 52(c) provides in relevant part:
>
> If during a trial without a jury a party has been fully
> heard on an issue and the court finds against the party on
> the issue, the court may enter judgment as a matter of
> law against that party with respect to a claim or defense
> that cannot under the controlling law be maintained or
> defeated without a favorable finding on that issue, or the
> court may decline to render any judgment until the close
> of all the evidence.
>
> Fed. R. Civ. P. 52(c).
>
> Dismissal of a claim under Rule 52 is proper if the plaintiff fails
> to prove a *prima facie* case, or after weighing the evidence under a
> preponderance standard, the court finds the evidence to be in the
> defendant's favor.  *See Johnson v. United States Postal Service,* 756
> F.2d 1461, 1464 (9th Cir. 1985) (discussing Fed. R. Civ. P. 41(b), the
> predecessor to the current Rule 52); 9 James Wm. Moore *et. Al.,*
> *Moore's Federal Practice* ¶ 52.51 (3d ex. 2003).

*Bank of Idaho v. Goodrich (In re Goodrich)*, 04.4 I.B.C.R. 166, 169 (Bankr. D.

Idaho 2004).

### D.    Plaintiff failed to meet the preponderance standard

Plaintiff's theory of the case is that Defendants, acting through RPM,

obtained funds from Plaintiff by fraudulent and larcenous means.  It asserts that

Defendants caused the subject invoices to be issued by RPM and provided to

MEMORANDUM OF DECISION - 13

Plaintiff under the factoring agreement with the knowledge that they were fictitious or otherwise uncollectible.  Plaintiff argues that even though the money was advanced to RPM, as a controlling shareholder Mr. Riegert stood to gain personally.  Plaintiff argues that the necessary knowledge and improper intent can be inferred from the circumstances and the chain of events, even in the absence of direct evidence.

Plaintiff's theory requires it to overcome several hurdles.  For example, in connection with the action under § 523(a)(2)(A), Plaintiff must show that Defendants, not RPM, made representations, knowing they were false and with the intent that Plaintiff rely on those misrepresentations.  In connection with the larceny claim under § 523(a)(4), the burden is similar.  Plaintiff must show that Defendants wrongfully acquired Plaintiff's money with larcenous intent and through duplicitous means.

### 1.    Defendants' knowledge and intent

In both causes, Plaintiff faces the difficulty of a lack of any direct evidence on the question of either Defendant's knowledge or intent.  Mrs. Riegert was never called to testify.  Plaintiff's examination of Mr. Riegert was quite brief.

Mr. Riegert noted that a factoring relationship had existed between RPM and Plaintiff under previous agreements for four or five years and that, prior to the period from May to November of 2003, there had been no problems with any of

MEMORANDUM OF DECISION - 14

RPM's factored invoices or accounts.  He indicated that a downturn in RPM's business, a downsizing of its operations, and turnover in its staffing all occurred during this same period in 2003.

Mr. Riegert acknowledged that he signed the fax cover sheets on the invoices submitted to Plaintiff.  Plaintiff did not examine Mr. Riegert about his involvement in the selection of the invoices or his preparation of the transmittals, nor about his knowledge of the details and accuracy of the invoices attached to the cover sheets at the time they were sent.  Instead, Plaintiff offered the testimony of an RPM employee, Deena Stanger.

Ms. Stanger was employed at RPM starting in November, 2002, as a receptionist.  When RPM relocated its business facilities in the fall of 2003, Ms. Stranger's duties changed to include printing invoices to be mailed, and faxing invoices to Plaintiff.[14]

Ms. Stanger said she would receive instructions from Defendants, either verbally from Mr. Riegert or in a written note from Mrs. Riegert, to print out invoices from RPM's computer records.[15]  She states that each invoice issued

---

[14]  The subject invoices span a time frame from May, 2003, to November, 2003.  Ms. Stanger's involvement with the factoring process commenced only in the "fall of 2003."  Thus there was no testimony or evidence as to RPM's processes or procedures from May, 2003 through the summer.  Twelve out of the twenty-three invoices at issue in this action were dated in May or June, and one in July.  The other ten were dated between September 5 and November 20.

[15]  The invoices exist; they were admitted as exhibits.  As to the invoices in the fall of 2003 (*see* note 13 above), there had to be computer records at the time as Ms. Stanger printed

(continued...)

MEMORANDUM OF DECISION - 15

correlated with a packing slip for either the shipping or local delivery of the designated products to the customer.[16]  She would also assist other RPM employees in packing boxes and preparing shipping labels, or arranging for the products to be delivered if the customer was local.

Ms. Stanger had no role in the maintenance of RPM's files and records regarding the invoices or the packing/shipping documents.[17]  She also had no role on the financial side of RPM.  As a receptionist, she would generally give Mr. Riegert checks from customers arriving in the mail.  Though Ms. Stanger said that Mrs. Riegert "handled" accounts receivable, she did not elaborate.  She admitted Mrs. Riegert was rarely at the office.  She was not questioned as to the number of other employees involved in the production, record-keeping or financial sides of the business.

Plaintiff relies on Ms. Stanger's description of Defendants' involvement in the invoice and receivable process, and inferences from the rest of the evidence, to meet its burden of proof.  Even though knowledge and fraudulent intent may be

---

[15](...continued)
them out.  However, the evidence (through admissions) indicates that certain of these issued invoices were not located in RPM's computer records.  *See*, *e.g.*, invoices in Group 2.

[16] Her testimony is therefore inconsistent with Plaintiff's counsel's representation that the shipping and delivery records do not reconcile to certain of the invoices.

[17] As noted, the responses to the requests for admissions deny that Defendants did either. *See supra* note 4.

MEMORANDUM OF DECISION - 16

established by circumstantial evidence,[18] the Court finds that Plaintiff asks it to assume and infer too much.

Plaintiff did prove that Mr. Riegert signed the fax transmittals that accompanied the various invoices. But Plaintiff did not prove that Mr. Riegert knew or had reason to know that certain of the invoices attached to the transmittals were not shown in or substantiated by RPM's records.[19]

The Court cannot criticize Plaintiff for questioning the process and investigating the possibility of fraud or larceny. There could be conflicting explanations for what occurred, one culpable though others not. That is, on the one hand, the transmittal of the invoices could have been but one step in a knowing and intentional effort to steal money from Plaintiff by shuffling fictitious invoices in among others. On the other hand, the subject invoices could be a matter of documentary error, administrative or procedural snafu, poor

---

[18] *See Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1018 (9th Cir. 1997) (noting that an intent to deceive can be inferred from surrounding circumstances).

[19] In fact, a good number of the invoices in question were, according to the responses to admissions, actually found in RPM's records. So, in connection with these invoices, Plaintiff cannot and does not contend that they were knowingly false or fraudulent. Rather, RPM simply failed to remit payments it received on them. It appears that the only misrepresentation in relation to those invoices could be that known in § 523(a)(2) jargon as "promissory fraud" (*i.e.*, a representation that payment would be made when the promisor has a present actual intent not to pay, or present knowledge of a prospective inability to pay.) *Capital Chevrolet v. Bullock (In re Bullock)*, 317 B.R. 885, 890 (Bankr. M.D. Ala. 2004); *FCC Nat'l Bank v. Gilmore (In re Gilmore)*, 221 B.R. 864, 868 (Bankr. N.D. Ala. 1998). The evidence was even more lackluster as to this fraud contention than it was to the allegedly "fictitious" invoices.

MEMORANDUM OF DECISION - 17

bookkeeping, or other failures of the business process.[20]

 While Plaintiff clearly believes the former to be true, it did not present preponderating evidence to establish that contention.  It is true a plaintiff is not required to establish a cause of action under § 523(a)(2)(A) or § 523(a)(4) by direct testimonial admission of a defendant or through showing the Court a "smoking gun," but neither can a plaintiff establish those causes of action simply by suggesting the existence of facts and fraudulent intent without sufficient circumstantial evidence for the Court to conclude that each of the required elements has been met by a preponderance of the evidence.  Evidence is what differentiates suspicion from actionable fraud or larceny.

 Plaintiff established only that Defendants asked Ms. Stanger to prepare invoices for submission to Plaintiff, and that Mr. Riegert signed the transmittal cover pages.  It did not explore in the evidence the extent of either Defendant's knowledge regarding the details of the invoices transmitted, or knowledge of the other records of RPM, at the time of the submissions.[21]  Plaintiff did not present sufficiently probative circumstantial evidence to support election of the "culpable" scenario over others.

---

[20]  The evidence certainly indicates problems existed in RPM's bookkeeping and records. But neither such problems nor the breach of the factoring agreement is actionable under § 523(a) in the absence of proof of intent and the other elements of fraud or larceny.

[21]  Perhaps Mr. Riegert should have known if erroneous invoices were being generated by RPM.  But fraud is predicated on knowledge and intent, not negligence.

MEMORANDUM OF DECISION - 18

Based on lack of preponderating evidence of knowledge and intent,

Defendants' motion will be granted and Plaintiff's causes of action under both

§ 523(a)(2)(A) and § 523(a)(4) will be dismissed.[22]

## 2.    Other unproven § 523(a)(2)(A) elements

While lack of proof of improper intent is sufficient grounds for granting

Defendants' motion, there are other problems as well.

### a.    Misrepresentation

Another element for nondischargeability of a debt owed by bankruptcy

debtors by reason of fraud is that a misrepresentation be made by those debtors,

here Defendants.  But the representations at issue were made by RPM.  That is,

RPM's submission of the invoices impliedly, if not expressly, represented that the

invoices were legitimate and properly subject to factoring under the agreement.[23]

Plaintiff did not attempt to pierce RPM's corporate veil.  It certainly did not

---

[22]  Proof of grounds for nondischargeability must be submitted for each debtor defendant. *See Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa)*, 258 B.R. 192, 198 (9th Cir. BAP 2001) ("[A] marital union alone, without a finding of a partnership or other agency relationship between spouses, cannot serve as a basis for imputing fraud from one spouse to another."). Plaintiff proved no case against Mrs. Riegert.  The evidence as to Mrs. Riegert's knowledge is practically nonexistent.  Plaintiff did establish, through Ms. Stanger's testimony, that Mrs. Riegert on some occasions left a note on Ms. Stanger's desk asking that copies of invoices be prepared for sending to Plaintiff.  There was no proof, however, as to Mrs. Riegert's knowledge or involvement with any of the packages at issue in this suit.  There was also no affirmative proof as to the extent of Mrs. Riegert's interest, if any, in RPM, or her general knowledge of the books and records of RPM at the time of the allegedly improper conduct.

[23]  Recall again that several of the invoices were "legitimate" and liability in regard to those invoices flows only from RPM's failure to forward payment later made by its customers.

MEMORANDUM OF DECISION - 19

prove in this adversary proceeding that the corporate form should be disregarded.

*See Sterling Int'l, Inc. v. Thomas (In re Thomas)*, 03.3 I.B.C.R. 178, 182 (Bankr.

D. Idaho 2003) (citing *Hutchison v. Anderson*, 950 P.2d 1275, 1279 (Idaho Ct.

App. 1997) and *Alpine Packing Co. v. H. H. Keim Co., Ltd.*, 828 P.2d 325, 327

(Idaho Ct. App. 1991)).  Generally, the acts of a corporate officer or employee

made in the name of and for the corporation do not give rise to personal liability.

### b. Reliance

Additional problems are faced in regard to the § 523(a)(2)(A) element of

reliance.  The justifiable reliance standard was explained in *Covino* in the

following way:

> Justifiable reliance is a subjective standard in which the knowledge of the plaintiff and the relationship between the parties is considered.  *Woodward v. Bethel (In re Bethel)*, 302 B.R. 205, 209 (Bankr. N.D. Ohio 2003) ("justifiable reliance merely requires that a creditor act appropriately according to his individual circumstances. This means a party may justifiably rely on a misrepresentation even when the falsity of the representation could have been ascertained by an investigation.  On the other hand, reliance is not justifiable if the creditor blindly turns their eyes away from things which would have clearly shown that any reliance on the debtor's representations was misplaced."  (citation omitted)).  *Accord Tran,* 301 B.R. at 583; *Tallant,* 218 B.R. at 67-68; *Idaho v. Edwards (In re Edwards)*, 99.2 I.B.C.R. 47, 48 (Bankr. D. Idaho 1999); *Smith,* 232 B.R. at 467.

04.3 I.B.C.R. at 104.

Some of the disputed invoices were purchased and funded in May and June

2003.  Others were purchased in September, October and even as late as

MEMORANDUM OF DECISION - 20

November 2003.  The factoring agreement gave Plaintiff the ability to require RPM to repurchase any account "the payment of which has been disputed by the Account Debtor obligated thereon, purchaser [Plaintiff] being under no obligation to determine the bona fides of such dispute" and could require RPM to repurchase all the purchased accounts upon an occurrence of an event of default.  *See* Ex. 4 at p. 5.1.  Events of default included default in the performance of any provision of the agreement, or if any representation proved to be false in any way however minor, or if the Plaintiff for any reason in good faith deemed itself insecure with respect to the prospect of repayment or performance of the obligations.  *Id.* at p. 15.1.

Plaintiff purchased accounts and had the ability to direct or collect the amounts owed from the account debtors.  The evidence indicates the invoices were payable within 30 days.  Obviously, some of the account debtors disputed that they owed amounts to RPM on the asserted invoices (*i.e.*, they already paid RPM).  If Plaintiff's contentions of "fictitious" invoices is accepted, other customers must have disputed the existence of any obligation to RPM at all.  There certainly is an issue of Plaintiff's justifiable reliance on the implicit representations of RPM in tendering invoices, particularly in regard to those disputed invoices that were submitted several months following the earlier disputed and/or unpaid invoices.

**CONCLUSION**

MEMORANDUM OF DECISION - 21

For the several reasons stated, Defendants' motion under Fed. R. Civ. P. 52(c), applicable herein by virtue of Fed. R. Bankr. P. 7052, is well taken and will be granted.  The complaint herein shall be dismissed.  Counsel for Defendants may prepare an appropriate form of order and judgment.

DATED:  September 13, 2005



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 22